# Richmond.

## PALMER AND ALS. V. GARLAND'S COMMITTEE AND ALS.

### FEBRUARY 11th, 1886.

LUNATICS—*Lands—Judicial sale—Case at bar.*—H., committee of G., a female lunatic, institutes a suit under Code 1873, ch. 124, to sell her contingent estate in lands, and conducts it in the proper manner, and against the proper parties, and adduces the proper evidence, in every respect in accordance with the requirements of the statute, and in his bill he presents the bids of certain parties who already owned other contingent interests in the same lands. The court, deeming that the interests of the lunatic will be promoted and the rights of no one will be violated by the sale of her said contingent estate, decrees that the proposed sales be confirmed at the said bids, and the said estate of the lunatic therein be conveyed to the said bidders.

HELD:

The sale is lawful.

Appeal from decree of chancery court of city of Richmond, entered 7th November, 1885, in a suit wherein W. S. Hunter, as committee of Ann R. Garland, a lunatic, was complainant, and the said Ann R. Garland and her sister (and only prospective heir-at-law), Rebecca C. Garland, were defendants. The object was to have the court confirm certain proposed sales of the lunatic's contingent estates in five certain lots of land in said city to William H. Palmer and three others, the appellants, who had presented to the court in the said suit their several proposals or bids for the purchase of the said estates. The court confirmed the proposed sales, and the said Palmer

and others, having become defendants in the cause, obtained an appeal to this court from the decree.

Opinion states the case.

*John H. Guy* and *F. W. Christian*, for the appellants.

*I. H. Carrington*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

On the 7th day of August, 1885, one W. S. Hunter, committee of Ann R. Garland, a lunatic, filed the bill in this case in the chancery court of the city of Richmond, against the said Ann R. Garland, a lunatic; Rebecca C. Garland, the sister of the said Ann R. Garland, and her only heir-at-law, if she should survive the said Ann R. Garland; the persons who would be the heirs of the said Ann R. Garland, if she should survive her said sister, Rebecca C. Garland, and then die a lunatic, or intestate, the names and residences of such persons being unknown; and the petitioners, William H. Palmer, E. T. D. Myers, Fannie C. Myers, L. T. Myers, E. T. D. Myers, Jr., and Lizzie Myers, and the Richmond, Fredericksburg and Potomac, and Richmond and Petersburg Railroad Connection Company, and Leopold Levy. The said bill was properly verified by the oath of the plaintiff, and it set forth that the said Hunter was the duly qualified committee of the said Ann R. Garland, who had been since 1849, continuously, and still is insane, and confined in the Western Lunatic Asylum; that one Clara L. Garland, a sister of the said lunatic, had first been appointed her committee, and had died; whereupon another sister, Amanda M. Garland, qualified as her committee, and then died, and that then the said W. S. Hunter qualified as committee of the lunatic aforesaid. The bill sets forth that

one Ann Bullock died in the year 1855, leaving a will, a copy of which is filed with the bill, whereby she devised the residuum of her estate to her four nieces, as follows:

"I give and devise to my beloved nieces, Ann R. Garland, Clara L. Garland, Amanda M. Garland, and Rebecca C. Garland, all the rest and residue of my estate, &c., &c. If any of my four said nieces shall depart this life, her part shall pass to the survivors, and so on, until the one last surviving shall take the whole of the residuum of my estate, not specifically disposed of herein in fee simple."

The bill alleges that among the property which passed under said residuary clause of Ann Bullock's will, there were various parcels of land situate in Richmond, Va., viz: Five parcels of land, described in the bill as Nos. 1, 2, 3, 4, and 5. Only one-half of No. 5, however, passed under Ann Bullock's will—the other half having passed under Rebecca Bullock's will to Ann R., Clara L., Amanda M., and Rebecca C. Garland equally.

The bill further sets forth that the three sisters, Clara L., Amanda M., and Rebecca C. Garland had undertaken to convey away the said several parcels of land, and that the same had been granted by a regular chain of conveyances, and are now in possession—No. 1 of William H. Palmer, No. 2 of E. D. T. Myers and his wife and children above-mentioned, No. 3 of the R., F. & P. and R. & P. R. R. Connection Company, No. 4 of William H. Palmer, and No. 5 of Leopold Levy. The bill sets forth all the property of every kind, real and personal, belonging to the lunatic. It further sets forth that William H. Palmer is willing to purchase all the interest of every kind of the said lunatic in lot No. 1, and pay therefor $1,700—the same to be in full satisfaction of all claims for past rents or profits or otherwise; that E. D. T. Myers is willing to purchase all the interest of said lunatic in lot No. 2 at $200; that the R., F. & P. and R. & P. R. R. Connection Company is willing

to purchase all the interest of said lunatic in lot No. 3 at $250; that William H. Palmer is willing to purchase all the interest of said lunatic in lot No. 4 at $250; and that Leopold Levy is willing to purchase all the interest of said lunatic in lot No. 5 at $750; but that the said several purchasers are only willing to purchase said interest of said lunatic in case they can obtain a good and perfect title thereto, which they are advised can be given them by means of this suit.

The bill further sets forth the facts showing it to be important to the lunatic and advantageous to her interests to make the sale of her interests in the parcels of land described in the bill, at the prices, upon the terms, and to the persons named in the bill as purchasers; and prays that the said proposed sales will be sanctioned and confirmed by the court, and for other specific relief, and for general relief. A guardian *ad litem* was duly appointed for the lunatic, and said guardian *ad litem* answered the bill on oath, and the lunatic, by said guardian *ad litem*, also answered the bill—the said answer being sworn to by the guardian *ad litem*. The cause was regularly matured as to the unknown parties defendant by order of publication, duly published and posted as required by law, and process was duly served upon or acknowledged by the other known defendants.

On the 13th day of October, 1885, the court entered a decree referring the cause to Commissioner Wm. I. Leake, to ascertain and report whether it will be to the interest of the lunatic to confirm the proposed sales, to the persons, at the prices, and upon the terms set forth in the bill. The said commissioner fixed the 23d day of October, 1885, for executing the directions of the said decree, and gave due notice of the time and place to all the known defendants and to the plaintiff. On the day and at the place fixed, and in the presence of the guardian *ad litem*, the depositions of sundry witnesses were

taken, and the commissioner made report that it would be to the interest of the lunatic to make and confirm the proposed sales to the persons, at the prices, and upon the terms set forth in the bill, and that the rights of no persons or person would be violated thereby, and returned his report and the depositions he had taken and exhibits. This report lay ten days in the chancery court clerk's office of the city of Richmond, as required by law, and no exception has ever been filed thereto. The defendants each filed a separate answer, in which they stated that they were willing to purchase the interests of the lunatic, at the prices and upon the terms stated in the bill, provided a good and perfect title to the said interests could be given them.

The court, thereupon, by a decree entered on the 7th day of November, 1885, being of opinion that it had jurisdiction to convey all the estate and interests of the lunatic in the said several parcels to the respective purchasers, and that it would be to the interest of the lunatic to confirm the proposed sales, and that the rights of no persons would be violated thereby, confirmed the said report of its said commissioner, Leake, and approved and confirmed the sales proposed in the bill, and appointed special commissioners, and directed them to collect of the several purchasers the purchase money, and thereupon to convey to them respectively all the interests of the lunatic, Ann R. Garland, in the said several parcels of land.

These facts all appear by a transcript of the record of the proceedings in the cause, filed with the petition for appeal which says: "Now, your petitioners are perfectly willing to carry out the proposed purchases, and to pay the purchase money and receive the conveyances, as directed in the decree of November 7, 1885, provided they will thereby obtain a good and perfect title to all the interests of the said lunatic, Ann R. Garland, of every kind, in and to the several parcels

of land aforementioned; but they are not willing to purchase such interests unless they will obtain a good and perfect title thereto."

We are of opinion that the chancery court of the city of Richmond did have jurisdiction to entertain this suit and to enter the decree of the 7th of November, 1885, and that the proper foundation for the said decree has been laid in the prior proofs and proceedings in the cause; and that, therefore, the petitioners will obtain a good and perfect title to the interests of the lunatic which that decree directs to be conveyed to them respectively.

As to the jurisdiction of the chancery court of the city of Richmond, *see* Acts of Assembly, 1869–'70, p. 43, chapter 43, section 5. The statute, section 2, chapter 124, Code 1873, expressly confers jurisdiction in such a case as this is. The suit is brought, by the committee of the lunatic defendant, for the sale of estate in which the lunatic is interested with others. The pleadings and all the proceedings show that every requirement of the statute has been strictly complied with, and the suit is brought in the proper court of the city in which the land proposed to be sold is situated. The lunatic and all interested have been made parties defendant, including the persons who would be the heirs of the lunatic if she should survive her sister, the defendant, Rebecca C. Garland, and then die a lunatic or intestate. The case was regularly matured; and the evidence clearly shows, independently of any admissions in the answers, that the interests of the lunatic will be promoted by the proposed sales; that the rights of no person or persons will be violated thereby, and that the prices offered are fair and just.

The interest of the lunatic to the property in question is not a fixed and vested interest, but is contingent. At present she and her sister, Rebecca C. Garland (or those holding under the

said Rebecca), are entitled to equal interests in the property—that is, each to one moiety; but the *survivor* will be entitled to the whole estate, under the devise in the will of Ann Bullock. It is competent for the court to decree the sale of a contingent interest. Sec. 2, chapter 124, Code of 1873.

The decree in this case provides for a private sale. This was proper, and indeed necessary, in view of the peculiar situation and character of the lunatic's interests in question. It consists of fractional parts of lots, and in such proportions and relations to the other interests of other owners in the same lots, that it would be most difficult, if not, indeed, impossible, to sell the said fractional parts of these lots in which the lunatic is interested to any one other than to these joint owners of other fractional parts, who will be likely to give more for the lunatic's interests than any one else. Under such circumstances, the decree for a private sale is regular and proper· *Hess* v. *Rader*, 26 Gratt. 749. The only object of putting up property at public sale is to give the public an opportunity of bidding; and this, not for the benefit of the public, but for the owner of the property. When, as in this case, the part owners are the only persons who are interested in bidding, and, therefore, no competition in bids can be hoped for, negotiation must take the place of a public sale, to prevent the sacrifice of the property sold. The evidence in the record shows that a fair result has been reached in this case, and it would be mistaken kindness to reject it and take the hazard of a precarious auction.

The decree of the chancery court of the city of Richmond, which is appealed from, is regular and right, and must be affirmed.

DECREE AFFIRMED.